### TEFFT *et al. v.* NORTH RIVER BANK.

### PEOPLE *v.* SAME.

(*Supreme Court, Special Term, New York County.* November, 1890.)

1. BANKS—INSOLVENCY—RECEIVERS—APPLICATION BY STOCKHOLDERS AND BY ATTORNEY GENERAL.

Laws N. Y. 1882, c. 409, subc. 6, § 125, renders stockholders individually liable for the debts of banks "issuing bank-notes or any kind of paper credits to circulate as money." Section 134 gives stockholders in such a bank, on showing its insolvency, a summary remedy, by which they may enjoin it from continuing business, and obtain the appointment of a receiver. A stockholder in a bank which had not issued any notes or credits for 24 years applied for the appointment of a receiver under said section 134, and shortly thereafter the attorney general also instituted proceedings under Code Civil Proc. §§ 1785, 1788, to dissolve the bank, and to have a temporary receiver appointed. *Held* that, as there was serious doubt whether the summary remedy given stockholders by Laws 1882, c. 409, § 134, applied to banks which did not issue notes or credits, the stockholder's application would be denied, and that of the attorney general granted.

2. SAME.

The fact that the bank, in common with all other banking institutions organized under the state law, has power to issue bank-bills to circulate as money, does not render it amenable to the summary remedy given the stockholders by the above section 134, where it is conceded that it has in fact issued no such bills for 24 years.

3. SAME.

An objection that the appointment of a receiver on the attorney general's application will render it necessary for the depositors to await the result of final judgment before receiving any dividends is not well taken, as Code Civil Proc. N. Y. § 1789, empowers the court to direct the temporary receiver to make distribution among depositors, creditors, and stockholders before final judgment.

At chambers. William E. Tefft and others, executors, etc., of Julia Apgar, deceased, applied for the appointment of a receiver of the North River Bank, under Laws N. Y. 1882, c. 409, subc. 6. Shortly thereafter the attorney general, on behalf of the people, instituted proceedings for the dissolution of the corporation, as provided by Code Civil Proc. § 1785, and he also applied for the appointment of a temporary receiver of the property of the bank *pendente lite*, according to the provisions of section 1788. Laws N. Y. 1882, c. 409, subc. 6, §§ 125, 134, are as follows: "Sec. 125. Whenever default shall be made in the payment of any debt or liability contracted by any

corporation or joint-stock association for banking purposes, issuing bank-notes or any kind of paper credits to circulate as money, the stockholders of such corporation or association shall be individually responsible, equally and ratably, such responsibility to be enforced as hereinafter provided and in no other manner, for the amount of such debt or liability, with interest to the extent of their respective shares of stock in any such corporation or association, as hereinafter provided." "Sec. 134. Any one or more stockholders of any such corporation or association, owning stock to the amount of one-tenth part of the capital thereof paid in, may at any time, in like manner, apply to any justice of the supreme court for an order declaring such corporation or association insolvent, or in imminent danger of insolvency. And if, on the facts verified by affidavit presented, such justice shall deem it necessary or expedient, in order to prevent fraud, undue preference, or injustice to creditors, he may grant an order in the nature of a temporary injunction, as specified in section one hundred and thirty-one of this act. Upon a hearing of the parties, as soon as may be practicable, he may require the exhibition to him, or to a referee to be appointed by him, of all the books, papers, accounts, assets, and effects of such corporation or association, and an examination of the officers, servants, and agents thereof under oath; and if he determine that such corporation or association is not clearly solvent, or that it is in imminent danger of insolvency, he shall make an order declaring such determination, and shall by order restrain the said corporation or association and its officers, in the same manner as provided in the last preceding section of this act, and shall also appoint a receiver of the property of such corporation or association."

*E. L. Fancher,* for Tefft and others. *Charles F. Tabor,* Atty. Gen. for the People.

O'BRIEN, J. Two separate proceedings have been instituted to effect substantially the same ends,—one by certain stockholders, to secure the appointment of a receiver under the general act relating to banks, banking and trust companies (Laws 1882, c. 409;) the other by the attorney general, to obtain a decree dissolving the corporation pursuant to the provisions of the Code of Civil Procedure, (1785 and 1788,) and incidental hereto to secure *pendente lite* the appointment of a temporary receiver. It is conceded by all in interest that under one or the other of these proceedings a receiver should be appointed. It is important, however, in view of the great interests involved, that the order appointing a receiver should be regular and valid beyond dispute, so that no question can arise as to the title of the receiver so appointed. Were it not that a serious, and, I think, fatal, objection is made as to the right of the court to appoint under the banking act of 1882, I should have been inclined to avail myself of the provisions of that act, for, in addition to other benefits, it would not have involved the destruction of the corporation or corporate franchise at the termination of the proceedings. In the action of the attorney general, brought, as it is, for the dissolution of the corporation, the final judgment will destroy the corporate franchise. In the attorney general's action, however, no question can arise or doubt exist as to the validity of any appointment made thereunder. On the other hand, an examination of the banking act under which the Tefft application is made has satisfied me that subchapter 6 of the act applies only to the banking corporations actually issuing bank-notes, or any kind of paper credits which circulate as money. Subchapter 6, with the exception of the one hundred and thirty-second section, is a re-enactment of chapter 226 of the Laws of 1849, which was entitled "An act to enforce the responsibility of stockholders in certain banking corporations and associations, as prescribed by the constitution, and to provide for the prompt payment of demands against such corporations and associations." It would therefore seem that the class of corporations embraced within subchapter 6 had reference

solely to corporations or joint-stock associations for banking purposes which were issuing bank-notes or some kind of paper credits which circulate as money. This is made clearer when we recall the fact that section 134 was intended to give to stockholders upon whom the liability was fixed in cases where the bank issued notes, a summary remedy to obtain an injunction, and the appointment of a receiver in cases where they had become liable by reason of the issuance of bank-notes or paper money under the provisions of the act. It is conceded here that the North River Bank has never issued during the last 24 years bank-bills or paper credits to be circulated as money, and the period of redemption for bank-bills theretofore issued expired under the statute on the 31st of December, 1872. The question here presented has been indirectly passed upon in the *Case of the Empire City Bank*, 6 Abb. Pr. 386. There the question presented was whether, under the act of 1849, (which has been re-enacted, as stated in the chapter under discussion,) to enforce the personal liability of stockholders of an insolvent bank, where the objection was made that it did not affirmatively appear that the bank was an association or corporation "issuing bank-notes to circulate as money." Held, that the objection was well taken, and that that fact must affirmatively appear in order to confer jurisdiction on the court. By parity of reason, it would seem, therefore, that although the North River Bank has, in common with all other banking institutions organized under the state law, power to issue bank-bills to circulate as money, that fact does not render it amenable to the provisions of chapter 6 of the general banking act. Therefore, as to banks engaged in circulating bank bills, in case of insolvency two concurrent remedies are provided to secure the appointment of a receiver. In cases of banks not issuing bank-bills, and whose stockholders are not liable to the penalty prescribed by the act, the proper proceeding in case of insolvency is an action such as has been here brought by the attorney general to dissolve the corporation. As undoubted power to appoint a receiver in the attorney general's action exists, and as the question of power to appoint, under the provisions of the general banking act, is, to say the least, in serious doubt, the application made by Tefft and others should be denied, and that of the attorney general granted.

It is proper, moreover, that I should say that the objection made as to the effect upon depositors is not well taken. While it is true that formerly a temporary receiver appointed in an action brought by the attorney general had power only to collect, preserve, and hold the property of the corporation, and was not authorized to pay out any moneys until final judgment, this has been changed. Section 1789 of the Code provides that a temporary receiver shall be subject to the control of the court, and, when specially directed so to do, may make distribution among depositors, creditors, and stockholders. In the order therefore appointing a receiver, a provision should be inserted that the receiver have leave, pursuant to section 1789, when he has sufficient funds, to apply to the court to make distribution thereof among the depositors, and this will enable the receiver, from time to time, as moneys come into his hands, to speedily pay all depositors of the bank without obliging them to await the result of any litigation or final judgment in the action. Ordered accordingly.